The oral argument is Engel v. Barry. I want to honor Julius Engel for appellant Mary Engel. You want to wait one second, Mr. Engel? Just wait one minute, Mr. Engel. People are coming in. We'll wait until they're seated. I think there's some seats down in the first couple of rows. Thank you, Mr. Engel. You may proceed.  All right. Thank the Court for having us review the various cases that the Court pointed out. The reason for this appeal is a search was conducted of a home without a search warrant in violation of my client's Fourth Amendment rights. The home is the most sacrosanct place we have in our society. The Fourth Amendment applies there more than anywhere else. There are lesser expectations of privacy, for example, in cars and in businesses and in the workplace, but there is the maximum expectation of privacy in the home. And that's where this illegal search occurred on January 2nd of 2003. My client was arrested. Ultimately, her record was expunged. I see from the Court's citations cases that they wanted us to review for today. It seems that the case law does support my client's position that she can maintain a Section 1983 action. Now, before we even get to the cases of does HECC apply, was habeas corpus available, which, of course, it wasn't in my client's case, we first must look at, I urge the Court, at is she convicted? What is the final result of this case? What is the final outcome in order to get past HECC? The easiest way to get past HECC would be to point out that it's a favorable outcome. Well, her record is expunged. The plea was changed to not guilty, and the record is expunged. The record wasn't expunged. Pardon? The record wasn't expunged, was it? Under Provo 3.4, well, you still have a record of what happened, but her plea under Provo 3.4, codified law of this State, changed her plea to not guilty and dismissal. So that's the last result. That's the end of the case. Is that your best argument? Not at all. That's my best argument. Let's start with that. I think the Court should start with that. Work your way up to excursion. Exactly. Why don't you give us the best? Certainly. Work your way up to the advice of the Court. But first of all, let's look at that. What does that mean? If your plea is changed to not guilty and your case is dismissed, to me it's tantamount to being convicted and then being reversed on appeal. A certain party might want to say, well, you were convicted once upon a time, so let's rest on that. Does she ever have to disclose that? No. This is not a disclosable. It's not a sexual offense or anything of that nature, misdemeanor. It's not a felony. Other than the set-aside, was there any other remedy that she could have followed to attack the conviction itself? Under Section 1983, there is no other. No, no, not other than under State law. In other words, did she have the opportunity either to appeal directly to attack the conviction? She pled, didn't she? Yes. So she couldn't have essentially waived any direct appeal then on the search and seizure? No. She would have waived that. And based on the case law that the Court provided in its review, we have convicted inmates that go back and successfully have Section 1983 actions because of that. I'm just trying to find out whether she had any other State remedy to attack and get rid of the underlying conviction completely. There is 851.8 of the Penal Code, which I was, you know, this was my client's my wife and a friend of mine. I understand that. And I was granted relief under 851.8, which is absolute expungement of the record. I never pled. I never used that foot in court. Right. So was that open to her? Frankly, not yet, because there's a provision that says, well, if a civil case is pending, you have to wait. So that's not open to her because of that clause in that particular statute. We're here today. And when this is resolved, unless a remedy of this Court takes care of it, then we can go for 851.8 relief. I'm not a party, so it didn't apply to me. So we have to wait. It's kind of a catch-22. Certainly this Court could provide relief or the Court below, if reversed, could provide that relief. Is there a provision in 851.8 that says if there's a civil suit pending? Yes. It is. And it just implicitly would toll, of course. Have you reviewed Guerrero, our Guerrero case? Pardon? Have you reviewed our Guerrero case? Absolutely, yes. That's a case involving a drug charge. Guerrero talks about, in order to bring in 1983, that you have to timely pursue any habeas relief, generally speaking. And how do you think that applies to your case? Well, my ---- You didn't. She didn't pursue any habeas. She had ---- Of any kind. She wasn't incarcerated. The cases cited state that there's the exact word is it's not ---- I forget the exact word is, but you can't pursue it. You'll be dismissed as moved because you're not incarcerated. So the only remedy left is Section 1983. And we're talking about a misdemeanor here, which involves work projects. And so that was over before you knew it. And I don't know. Also in the cases cited, you can begin habeas relief, and then when you're released during habeas relief, what would have happened here, then you can go to Section 1983 relief. So all the cases here indicate that Section 1983 is appropriate if you're not incarcerated or if you are incarcerated. The only action that she did bring was to reduce her sentence. Pardon? The only action that she did bring is to reduce her sentence. Well, correct. And that was successful. After what, about 20 months? Correct. We brought 1203.4 under the penal code. To terminate probation. Yes, correct. It takes two motions in one. First, to terminate probation. What's your argument to say that that satisfies the requirements of Guerrero? Well, I think what Guerrero says simply is that you can pursue excessive force, Section 1983 action, when it doesn't necessarily invalidate the underlying conviction. In this case, it's drug dealing or possession. So certainly there's no violence involved in that case, as opposed to Cunningham where we were talking about shootouts with the police. And the whole issue was, did the police start the shootout or did you start the shootout? And the jury found that they started the shootout. That would have validated the underlying conviction had they had Section 1983 relief. This case does not have such an element in it. Can you take a minute to talk about the dogs since you've got three minutes left and you may want some time? Thank you, Your Honor. Well, the dogs were taken without any kind of due process whatsoever. She was told to sign a release for the dogs. Otherwise, they would be ‑‑ she would be charged with a felony or another felony were the words there. And so she had no due process whatsoever. And needless to say, the taking of the dogs was very traumatic to her and her children who ‑‑ She signed a release. Yes. I've been threatened and will charge you with another felony. That's not raised in the briefs. There's no threat. There's nothing raised in the brief trying to invalidate the release based upon any coercion. Well, I'm sure that's not there. It should be. It's in the record. And ‑‑ I'm just talking what's on appeal. Okay. You argued that on a due process. Okay. Failure to have a hearing. But the release was never challenged as being a release that was taken under duress or that was in being valid. But she did sign that release. But what she did, those were the circumstances under which she signed it. And in my view, she was entitled to a hearing. That was a way of dancing around the hearing requirements. And it's a common practice, you know, we'll charge you with a felony. What happened at her sentencing when she did the NOLO? I was not there. Okay. I know you're not there, but what happened? Because at the sentencing, as I understand it, she was given the probation and there was a restriction put on that she could only have one dog. That's because one of the dogs escaped during the situation. Were the other three dogs mentioned anywhere in that sentencing proceeding? What was mentioned in the sentencing proceeding was one dog escaped and returned. So we had one dog left. So they first said no dogs, and then they said, well, we have one dog returned. The other three dogs had already been disposed of. That's correct. Was that raised during that sentencing proceeding as a post-deprivation due process requirement of notice? Well, I wasn't there and I didn't see a record of that. There is no record. Yeah, but we did talk about all dogs were addressed, and the one that came back was one, you know, we have that one. So we're allowed to keep that one dog. You can understand my confusion. If there's four dogs, three have been disposed of by the animal services before the hearing. Yes. At the hearing, there's a note that you may retain one dog. Were the other three dogs mentioned anywhere? Because the question is due process. Was any notice given to you about the dogs post-deprivation? No, no official notice at all. We just know that one. And nothing was mentioned at the hearing? No, I'm not saying nothing was mentioned at the hearing. I wasn't there. But the dogs, the fact that four dogs were originally there had to be mentioned at the hearing. And then one came back. That was discussed with the counsel that was doing the case. One dog did come back. So, Your Honor, may we please have at least this one dog that survived this melee. And, of course, the judge said yes. There are also a couple of other things, counseling and things like that, that are required by statute. Those were all suspended by the judge. He found good cause. No counseling. And I think a shorter probation, a four-year probation. He shortened it to three and found good cause and put it on the record. And so this is very ‑‑ and also my client was led to believe that I would not be prosecuted had she pled. And that was false. And I was. But, of course, the charges were dismissed, thankfully. I did prevail under 851.8. And my record is expunged and clean. She's more afraid of the system than I am. And that's unfortunate what happened there. Counsel there, by the way, is no longer a member of the bar. And it's another post event after this, after all of this. That's another issue altogether. But I think on the cases that Your Honor has had us review, clearly she can maintain a 1983 action on the excessive force, on the taking of her property, the illegal search. And she can maintain that action. Your time is up. Thank you. Thank you, sir. Do I have rebuttal? We'll give you one minute. Good morning, Your Honors. May it please the Court. Jonathan Paul on behalf of Appellees Berry, Hammer, Soles, Sparks, and the County of Sacramento. Members of the Court, I'm prepared today to discuss with you how Heck v. Humphrey actually applies a bar to plaintiff's claims in this case. As we've been asked to brief and be prepared to discuss the Spencer, Guerrero, Nonet, and Cunningham cases, I'm here to suggest to you today that the Guerrero case is most applicable to the facts of this case. You win if it's Guerrero. You lose if it's Nonet. That is correct, Your Honor. Just like in Guerrero, Ms. Engel, in this case, pled guilty to the charge which we are seeking to justify the bar from the wool in Heck. She did not pursue a timely hapeas corpus petition. She did not pursue an appeal following. What were her remedies open to her under state law? She had a direct appeal open to her. Even after she pled? That is correct, Your Honor. We should also note the fact that she made the decision to plead with the advice of counsel. I understand. I'm just trying to understand what within the state system was open to her. She availed herself of a state remedy. The question is what other remedies were available. So she had a direct appeal, notwithstanding she pled no law or she? She pled no contest, Your Honor. No contest. But under California law, she could then have still appealed to attack the raised Fourth Amendment. I believe that's correct. She could have also, if she was dissatisfied, she could have asked to withdraw her guilty plea or her no contest plea and sought a trial on the issues. What about state hapeas? I do not. I can honestly tell you I do not know. I don't practice criminal law. I do not know if she had state hapeas available to her. When you said hapeas, you were assuming then she had to go and come. Assuming she exhausted the state. You know, it's always helpful to let the judge finish, even if it's a rambling question. My apologies. Otherwise, you don't know what you're answering, and you can give away the store. You sound like me at a deposition, Judge, but my apologies. Okay.  All right. What I'd like to ask is whether or not if the habeas that you're talking about was a federal habeas then, when you said she didn't pursue habeas. The hapeas I was speaking of would have been the state hapeas. Again, I'm not. You're just telling me you don't know that she had state habeas. I do not know. I'm not a criminal practitioner. I understand. But you're invoking Guerrero. Okay. Do you think they should have sent a criminal practitioner to answer the questions in this case? No, Your Honor. Then what relevance is it that you're not a criminal practitioner? Habeas isn't a criminal proceeding, by the way. I understand that, Your Honor. It's like saying I wasn't there, so I don't know what happened when there's a record. Now, if there's no record, that's one thing. But I wasn't the one who tried the case. That's not relevant. What's relevant is that you're supposed to know the answers to these issues if you come. They're not supposed to send another kind of practitioner. And if they are, you should tell your office to send one in the future. I apologize, Your Honor. Maybe I spoke too soon. It's my belief. I'm not certain it is my belief that she would have had state habeas. Then how can you represent to us that Guerrero controls, because what Guerrero says is whether she timely pursued appropriate relief. She timely pursued a state remedy. Now the question is whether she had something that she could have pursued that would have properly invalidated the conviction. You said, well, she could have withdrawn her plea and gone to trial. Okay. I'm not sure that's what Guerrero had in mind. You said she could, you think, do a direct appeal, and you're saying she could have pursued habeas. You don't know whether she could or not. So how are we supposed to know whether Guerrero has been satisfied then? Your Honor, I apologize for speaking out of tone earlier. I do believe she could have pursued habeas relief. I'm not certain on that issue. It's not my intention to misrepresent it in this Court. I'll simply say I'm not. If you're wrong, if there was no state habeas available, then you lose. I believe that would be correct, Your Honor. Okay. Thank you. I should point out, though, she did pursue remedy 1203.4. Counsel has suggested that that is an expungement. That is, in fact, not an expungement. It's merely a setting aside. We understand that. The question is whether there was something else she could have done that would have been better than that. It is my understanding and my belief that she could have pursued habeas relief. If, in fact, that is the case, then Guerrero would apply, and Heck would act as a bar to her. Well, I suppose you can always file habeas. Maybe the question is, was she obligated to file a habeas action, whether she could or not? I don't know whether you can under state law. Being she pled null, I don't know what that does. But she didn't file anything. That's clear from the record. All she filed was under the statute to reduce the terms of her probation, right? That is correct, Your Honor. And that was successful. We know that. We don't know anything else. That is correct. Okay. So now apply either Guerrero or Nanette. How do you interpret it from that record? Sure. As was explained in Guerrero, Nanette involved a unique situation there where it was that decision was founded upon the unfairness of barring a plaintiff who had potentially legitimate constitutional claim, and after that, the individual had immediately pursued their relief. Here we're not talking about an individual who immediately pursued any relief. Ms. Ingle waited some 18 months before bringing her petition to set aside the sentence that was imposed against her for her conviction. Well, she did it during the period of her probation. I mean, are we to turn this on immediate, like five hours after she's sentenced? I mean, I don't know that the case turned, that Nanette turned on immediate. It's the fact that they filed something during the time. The question is, what can you complete during that period while you're incarcerated? So during the period of her incarceration, she applied. Apparently, as I remember, it failed the first time she finally got it on after 20 months. Isn't that about right? That's about right, Your Honor. Now, you're saying that that doesn't, so how does that fit into Nanette? Well, she would have waived her appeal in that time period. Had she pursued a direct appeal, her time limits for filing that appeal would have passed by then, so she did not seek any immediate relief. Therefore, my argument is she would be not entitled to the exception provided for in Nanette. That is that her state relief would not qualify for the exception for Hecht. That is correct, Your Honor. And therefore, I believe that is why Guerrero would be applicable because you have a situation here where you have an individual who is not seeking to expunge their record. They're not seeking to bring themselves outside the bar of Hecht. Rather, they're seeking to set aside their conviction in hopes of winning a payday by a separate 1983 claim. Now, if she would have brought some state action, so to speak, and that state action drug on for whatever reason and her term of incarceration then expired, then we would get into the exceptions, wouldn't we? I believe that would be the case. However, we should point out, though, that Ms. Engel was never incarcerated behind bars. She was simply sentenced to three years of probation. The probation, the same thing. If the probation would have expired during the proceedings of a so-called qualified, if you will, direct appeal, then she wouldn't be barred by Hecht if that's what terminated her attempt to do that. Correct? I'm sorry. I don't believe I understood your question, Justice. Okay. Let's suppose that she filed a direct appeal during her six-month probationary period. And during that period, the appeal didn't satisfy, it didn't finish. It's still lumbering through the process. Her probation period expires. Therefore, she wasn't able to complete it. That wouldn't bar her bringing a 1983 later, would it? I don't believe that would apply as a bar because if she filed the direct appeal challenging the conviction, you're not talking about a hapeous proceeding, you're talking about setting aside the conviction, or excuse me, overturning the conviction based on some other grounds. She did not do that in this case. She never challenged the conviction. So filing the direct appeal according to your argument wouldn't make any difference for the Hecht analysis the way you look at it anyway? No, that's not correct, Your Honor. I think it would have made a difference. Had she filed the direct appeal and had the conviction overturned, Hecht certainly would not serve as a bar to her action. What's clear, Your Honors, is that Ms. Engel chose, she picked her poison, so to speak. You're going to be out of time. Could you say something about the dogs? Sure, Your Honor. As far as the dogs are concerned, I'm a little bit concerned that it seemed as though when Mr. Engel was testifying as to what occurred with the dogs, there is no clear record on what happened with the dogs. What we do know from the record is that she signed. They were taken into custody, right? That's correct, Your Honor. There were four dogs. One, for whatever reason, survived. The three were euthanized. I don't believe that's clear from the record whether or not at the time at which they were euthanized, but what I do know is this. Ms. Engel signed a waiver on site when the dogs were taken. Now, she at some point alleged that that waiver was under duress, didn't she? She did make an allegation of that, that the waiver was under duress, based upon a statement by officers, Deputy Soles, not by Animal Control Officer Sparks, which is a distinction that needs to be drawn. Secondly, she did have a hearing regarding the dogs as a part of her criminal hearing or criminal sentencing. Were the dogs alive at that point? That is unclear from the record, Your Honor. So we don't know whether it's a post-deprivation hearing or a pre-deprivation hearing. That is correct. So what are we supposed to do with that? I think you could still find an exception for the taking of the animals, as the district court did. They found the exception, the language escapes me, the emergency exception applicable there in the taking of the dogs. It wasn't that there was no emergency that they euthanized the dogs. There may be an emergency to take the dogs. Correct. Because you can take your dogs as many and kill them. Well, there is also the procedure available that plaintiff, the appellant, could have gone and picked up the dogs from the animal control shelter after she signed the field release, Your Honor. Again, the record is unclear. We do not know why she did not do that. As I remember the agreement, by the way, I don't remember the appeal being based upon a coerced release agreement. It was based upon due process that she didn't get the due process for the taking of the dogs. But as I remember the agreement, the agreement said we will hold the dogs, put them up for adoption, and then at some point we can euthanize them. That is my understanding. So that would mean you're saying that she could have went and picked them up because they were being held for adoption. She could have been back and got them. That is my understanding, Your Honor. So how does that fit into the sentencing hearing where she was restricted to one dog? I believe that was because of the state of the household and the charges that were brought against her. I know. But she goes back and picks up the dogs, and you're saying that precludes this due process claim, yet when she – and the record doesn't show when they were euthanized. We seem to have a lot of unknowns. So how do we dispose of this? Just tell me that. I think we dispose of this based upon the fact that it was appellant and plaintiff's trial. The court – the district court found the exceptions on the defendant's behalf. They found the emergency exception. I know, but that may be true. But he brought a due process claim saying he wasn't given notice, and it was a due process violation. And I haven't heard where they were given any post-deprivation claim – post-deprivation hearing. The hearing would have been the criminal hearing itself. And what happened? At the criminal hearing, she was limited to the taking of – she agreed, excuse me – stipulated with the DA's office as a part of her plea agreement to having only one dog in her possession. And what did they – and what was the hearing regarding the three dogs at that point? That I do not know, Your Honor. So there wasn't on this record? Under the record, that's correct. Well, I guess we'll do whatever we can with whatever we have before us. Thank you. Thank you, Your Honors. I'll give you one minute for rebuttal. Thank you, Your Honor. In my next, above footnote 6, page 877, I believe, it states, We have frequently held that in the exercise of our appellate jurisdiction we have power not only to correct error in the judgment under review, but to make such disposition on the case as justice requires. Your discretion is broad, very broad. Do you know of any case in which we've discussed the issue of what rights you have and how heck applies if you have a probationary period alone as opposed to a criminal sentence of incarceration? According to the case law that I have read, Heck was still incarcerated, so he was supposed to do habeas corpus. And in other cases, such as Spencer, who was not. No, no. I asked whether there are any cases in which it was a Heck issue and the only sentence was probation. Frankly, I haven't found it. It's all these felony cases and such and people on parole and so on. Who have come out of prison, but you're not aware of them. I should have asked your opponent. You're not aware of any cases as to what procedures you have to exhaust in order to avoid Heck if the only sentence is probation. No, I have looked. I have not found such cases. In this case, it is a misdemeanor, and under California law, I think under the Federal Code as well, a no-contest plea in a misdemeanor case cannot be used as any kind of admission in civil court, while a felony plea of no contest can. Well, what might be reasonable as far as exhausting appeals or filing habeas suits could well be different if the only sentence was probation. Certainly. Certainly. Well, I think the suggestion also in the case that I was looking for, I can't find it right now, but timing is addressed by the courts. You may seek one remedy or another, and time constraints may push you out, farther out, and that should be considered by the court. So I don't think she has to appeal her conviction if she pled no contest. It's really excessive force in a case like this can be litigated, as in Guerrero. I mean, it's not the violent case where you have self-defense or you have resisting resistance. All right. We're over our minute. Thank you very much, Your Honor. Thank you, counsel. The next case on the calendar is
judges: Reinhardt, Brunetti, Fisher